The Honorable, the Judges of the United States Court of Appeals and the Court Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable of the United States Court of Appeals are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning. Welcome to the Court of Appeals. Please be seated. All right. We're prepared to hear arguments in two cases today. We'll start with the case of the United States v. Perez. Mr. Kenden, we'll hear from you. Good morning, Your Honors, and may it please the Court. Mr. Perez's conviction under 1466A should be reversed because the government failed to prove beyond a reasonable doubt through admissible evidence at trial the jurisdictional element of the crime. As alleged in the indictment, it had to prove that the pencil drawings at issue here were made and possessed within the special maritime and territorial jurisdiction of the United States. The evidence at trial was that the drawings were made and possessed in a cell at FCI Petersburg, which is a premise on this presumption, this 312C presumption here that it's conclusively presumed that jurisdiction doesn't exist if you don't have the government accept jurisdiction over it. In a way, Your Honor, there's a threshold question of whether the property was acquired before 1940, in which case the opposite. But ultimately what you want, that's what's going to give you relief, right? Yes, Your Honor. Well, that's my question. It's premised on this, so then we look to see is this something that's been activated. So before 1940, is it in 1940 where the reversion sort of happened on the Virginia statute? So before 1940, when the United States acquired property in a state where the legislature had consented, it was automatically presumed that it acquired concurrent jurisdiction, at least, in that special territory. So if this had happened before 1940, you are comfortable this would not be before us? No, Your Honor, because the documents the government submitted here in judicial notice on appeal in its motion actually apparently show that the Virginia consent to the United States acquisition came with strings attached and that those strings were not, that the conditions Virginia attached were actually violated, which under Parker, I believe, is the Supreme Court case allowing that practice. And so the transfer from Department of War, Department of Justice, or, sorry, Department of Defense to Department of Justice, starting in the 30s and then it was 1950-something they finally finalized the transfer, was a different use than the use for which the property was acquired, which was. So, I mean, my colleagues have a lot of questions, too, I'm sure. The legal argument you present has some force to it. But the result, wouldn't the result be that all of the cases that have been murders and any kind of offense that has occurred on there, since there's, the presumption is not met, I mean, wouldn't that overturn all of them or essentially indicate that they are in question, too? No, Your Honor. There's a few different reasons. There aren't too many statutes regarding prisons or prosecuted for crimes coming out of prisons that rely on the special territorial jurisdiction argument. In fact, 1466A, the statute here, has several different jurisdictional hooks, any of which the government could assert. In fact, they alleged a different one but didn't prove it, the commerce element. Second, statutes like 18 U.S.C. 111 apply to protect federal employees, so any assaults against staff could be punished as assaults on federal officers. There's a separate set of statutes in the 1752, I think, range, which punish contraband in prison and actually have a prison jurisdictional hook, so there are many other ways that prosecutions coming out of particular prisons can be prosecuted without resort to the special territorial jurisdiction argument. Does the state have the opportunity to prosecute if the state doesn't? Absolutely. I think the most that anybody is asserting, even the government, is that the state has concurrent jurisdiction. I don't think anybody is saying that the federal government has exclusive jurisdiction over FDI Petersburg. Concurrent means, at least when I was in the military, we would have it from time to time, meaning you could get prosecuted by both. Exactly, Your Honor. So that would be an available route to prosecution if the government were to find itself unable to establish jurisdiction. This discussion, don't we have to decide first who makes that decision? Yes, Your Honor. The first question is, is the jury deciding the legal conclusion about jurisdiction? It seems like there's agreement that for the facts underlying the jurisdictional element of the offense, those have to be proven beyond reasonable doubt to a jury. The next dispute seems to be, does the conclusion about whether those facts create jurisdiction, is that something for the jury or for the court? Isn't that our threshold question? I agree it's a question about who decides, but I think the facts, there may be a dispute about what are the facts necessary to put this place within jurisdiction. What we know from the trial testimony is that FDI Petersburg is a federal prison where generally populated by inmates. There may be a dispute about the facts, and that answers Judge Gualban's questions to the fact that, yes, there's a jury, it would be more likely to be a jury question. Yes, it would be. That's what you're saying? Yes, but the specific facts when we get to this are, one, whether the property was acquired before 1940 or after. So there's a specific date, and it has to be shown whether it was before, in which case it's presumed, or after. There has to be this additional fact of an act of acceptance of jurisdiction. Why are those facts? Those aren't the who, what, why, where of the case. The who, what, why, where, when of the case is what your client did and where he did it. And the facts to the extent they involve jurisdiction, this whole business of when the property was acquired, why aren't those legislative facts that courts look at and decide? Because we don't want to, I mean, it would be unusual if one jury said this was not within the special territorial jurisdiction of the United States in case one, and then in case two they said, well, it was within the special territorial jurisdiction. That would be kind of an odd thing for something like jurisdiction. Why aren't those matters, by their very nature, legislative facts that the court would do? To address first the possibility of inconsistent jury verdicts on a single property, it's practically unlikely, just as this court doesn't routinely see disputes about whether a particular bank, say Wells Fargo, is FDIC insured, or whether a particular gun manufacturer manufactures firearms abroad to prove the jurisdictional element for 922G cases. But really when it comes down to it, Jackalow is the case, it's 1861, that says essentially, and that was the parallels are striking. The jury actually issued a special verdict saying we conclude and find beyond a reasonable doubt that it occurred at this particular geographic location on this particular ship five miles west of whatever point. And then the court, in a lower court, a three-judge panel had sat in trying to figure out whether that was on this side or that side or whether it was within the territorial jurisdiction, I guess, of New York or just in the open seas. And the Supreme Court refused to decide and said just give the jury the maps, instruct them on the law and the meaning and the construction of all of these statutes, but they have to reach the conclusion. And I get your argument on Jackalow, and I think the government needs to talk about that. But if Jackalow is the linchpin of your position, all these courts from Taylor and all the circuits that have said these are legislative fact findings, not only got the result wrong, they were looking at the wrong precedent. Right. All these courts and all these lawyers just missed it. Not all of them, Your Honor. Bellow, the First Circuit held – Did it rely on Jackalow? Sorry? Did it rely on Jackalow? No. I don't think anybody cited it until 2023. So the argument you're making has not been cited by an appellate court in this context ever? Regarding Jackalow, no. Regarding whether it's an adjudicative or legislative fact, yes, the First Circuit has concluded that it's – These are adjudicated facts. Adjudicated facts, right. That's the one circuit that's done it. Right. Most everyone else has done the contrary. Well, the Second, Fifth, and Eighth are on the other side, and this court hasn't, frankly, come down one way or the other. Although we've embraced the Bellow standard in other contexts. We've quoted Bellow and said what really matters is how the fact is being used and not what the fact consists of. Yes, Your Honor. And that's derived from 201. When they enacted it, they made sure that this applies to adjudicative facts. And in the commentary, they distinguished between legislative facts. And the standard they set there is that legislative facts have relevance to legal reasoning and the lawmaking process. And all of the commentary after that, Professor Larson, facts used, quote, to form and apply legal rules. Judge Keaton, facts that serve as premises in the reasoned explanation of the decision of a legal issue. Professor Haley Proctor, facts required for, quote, law determination as opposed to law application. Can I ask you a question? I understand your argument about adjudicative facts and the need for a jury to make some fact findings here. But it strikes me there's a who decides question. Is there also a when question here, kind of a temporal aspect to your argument? I mean, could one imagine a world in which you thought maybe a judge can make some, take judicial notice of some legislative facts here, but you still can't do it after the conviction and on appeal? Like if someone's going to determine whether your client is guilty or not, that has to happen at trial, when your client would have the full protections that attend a trial like discovery under Rule 16 and things like that. And we can't, like, we can't convict your client on appeal. I mean, for one thing, where is he? If this is his trial, if this is the proceeding that's going to determine whether or not the elements of the offense have been satisfied, I mean, isn't he supposed to be here? Yes, Your Honor. And the exhibits would have to be introduced and they would have to establish. That's for a fact finder. And this Court, with due respect, isn't supposed to be finding facts. It's supposed to be deciding issues of law. And the ‑‑ I don't see a way, though, to separate out the question of whether it's just a purely legal issue, which this Court, I think, could decide if it is, versus whether it's a factual issue, in which case it's just the evidence at trial was not there and a judgment of acquittal is the appropriate remedy. So I don't see any sort of middle ground for a remedy involving a remand or a new trial. I think it would be forbidden by Berks and the Double Jeopardy Clause. I was just trying to figure out how much we have to decide in this case. Yeah. Okay. In this case, the trial evidence was this is FCI Petersburg. There are federal inmates serving federal ‑‑ I understand your argument that this was not proven at trial. I'm just trying to figure out. Because as I read Burroughs, our decision in Burroughs, we seem to contemplate in that case, look, had you asked the trial judge to take judicial notice of these facts, that might have done the trick. It's just that you didn't, and we're not going to do it for you on appeal. And that would be what the First Circuit did in Bellow. It actually was judicial notice, but it was under Rule 201, and they affirmed because the trial court had meticulously followed Rule 201F, and now it's F, it was G, that instructs a jury in a criminal case that they don't have to, under Sandstrom, that they don't have to take the notice fact as conclusive. So it still leaves ‑‑ it doesn't infringe on the jury's fact‑finding role in the case. And that's a separate ‑‑ there was a waiver of jury trial in this case, so that would be a separate issue for a separate case. But it appears that there's a good argument that 201 respects the jury's role, even while allowing a trial court to take judicial notice of these facts. So how does this relate? The notion that we don't find facts is certainly true in one sense, but is it true on legislative fact‑finding? No, Your Honor, so the court's absolutely true. If we're in the legislative fact‑finding role, you agree, don't you, that trial courts, appellate courts, the Supreme Court do that? You know, with some frequency. Absolutely. They're doing it right now. I think there's that big case involving the treatment or the medical ‑‑ the restrictions on medical procedures on children and trans rights, and the court has to find all sorts of facts in order to ‑‑ Sorry, I just want to ‑‑ I find this case so ‑‑ I find it actually very conceptually difficult. Is it common in ‑‑ I mean, is it common in criminal cases? I mean, I know that there are these old cases where courts do appear to take judicial notice of an element of the crime, the jurisdictional hook. Is that common? No, it's impossible, especially since Apprendi, but I think even since In re Winship, it says every element of the crime must be proven beyond a reasonable doubt at trial to a jury. These ‑‑ there was some sort of confusing these jurisdictional elements with issues like venue, which venue does only have to be proven, or venue doesn't ‑‑ isn't an element, essentially, and the Supreme Court just decided that this last term. That's what Jacquelet was. Right, exactly. And so the Supreme Court said when a jury acquits because of lack of venue, you can retry the person. Well, why is this not ‑‑ I mean, we have criminal gun cases that now are being challenged under Bruin, and, you know, the Second Amendment defense, at least, is subject to legislative fact‑finding concerning history and tradition, isn't it? Yes, and those are all, to get back to Judge Harris's question before my time runs out, about what the Second Amendment means. They're about the interpretation. They're upstream of the question of what does this law mean. There's no dispute here, and I see my time is running out. All right, Mr. Gamble, we've got a few minutes in rebuttal, so we'll be hearing back from you again. Thank you. Mr. Nguyen, with an I. You're next. Good morning, Your Honors, and may it please the Court. Connor Nguyen for the United States. As Judge Quattlebaum acknowledged, there are two questions in this case. The first is a methodological one, and the second is a follow‑on legal question if this Court concludes that it may take judicial notice and decide as a matter of law the jurisdictional status of F.C.I. Petersburg. I want to walk through those two questions one at a time and explain why this Court should affirm and to address Judge Harris's conceptual challenges with this case, because I agree this is dense. So to start with the methodological question, which I think is the denser question here, at least from a legal point of view. So the way that Section 7.3 works, right, it's a subsection of a statute that defines a number of places throughout the United States that Congress has legislative jurisdiction over and has acquired jurisdiction over through two constitutional processes, state consent or session. I'm so sorry. Yes. Can I ask you, actually, I hate to interrupt, but I just wonder it would help my conceptual confusion if we could kind of start with what happened at this trial. Sure. Because it seems like at trial the government was under the impression that it did have to prove up jurisdiction to the jury, right, because you called a witness to prove that, well, first of all, to prove that the copier moved in foreign commerce, which I guess would be a legislative fact on your understanding because that is just a fact about the world that is not dependent on what happened in this case, and it would be weird if you had two different jury verdicts about whether this copier. So you were prepared to prove up that legislative fact, and you were also prepared to prove up the special territorial jurisdiction of the prison. It's just that you did it under the wrong standards. So I feel like we're in this weird situation where at trial, yeah, of course, you have to prove this stuff to a jury. That's what a trial is for. And you just messed up. Like you brought in the wrong barcode for the copier, and you used the wrong standard for special jurisdiction. So how is that not the end of the case? So I think specifically what's relevant here is the district court's finding on the special territorial jurisdiction point. And you can see this in JA120. But do you think the district court was right? And if so, what's with the new 300 documents? It doesn't look like you're asking me to affirm the district court's finding. You want us to make a brand new one based on an additional, I can't do the math, but many, many documents. So I do think that the district court was correct. I think its baseline legal ruling is right, that FCI at Petersburg lies within the jurisdiction of the United States. Now, it based that on legal cases that I don't think on their own fully answer that question. But its legal ruling is actually correct. And so what's no different here is- But do you think that the three documents you submitted at the motion for acquittal stage are sufficient to prove this element? And if so, why did you give me 300 new ones? Right. So I think the document at JA, I believe it's 168, the one that's showing the attorney general ordered the creation of the prison on the Campley military grounds, I do think that one's enough to show that the prison that became FCI Petersburg was established before 1940 as necessary for the federal government to presumptively have accepted jurisdiction under 3112. So I actually think that that document is on its own enough. We've added these documents, which are noticeable by this court because they represent legislative facts going to the jurisdictional status of FCI Petersburg to give this court a more comprehensive understanding of exactly why that is the case. Now, I think going to how the district court went about resolving this issue here, Judge Harris, you can see on JA 12728 its findings on this point. The first thing that it does is it says, Mr. Perez's crime occurred in FCI Petersburg. That's finding the purely factual component as to where his crime occurred. The next thing it does on those pages is it rules that as a matter of law, FCI Petersburg lies within the United States territorial jurisdiction. That's its legal ruling. And then what it does is it applies that legal ruling to the fact at hand where Mr. Perez's offense occurred. So it's applying laws to facts as fact finders ultimately do. And that's when it says that, and it concludes on JA 128, that his offense occurred within the special territorial jurisdiction of the United States. Now, that's... So I think I understand, although I wrestle with it, but I think I understand your argument. But why did the government try to prove these up as facts for, it wasn't a jury, but for the fact finder at this bench trial? I mean, is that just something you do like belt and suspenders? We don't have to do this. We could just do this as a matter of judicial notice, but we're going to go ahead. Like, I do all those 922G cases, you know, and the government's always trying to prove up where the gun was manufactured, which, again, a fact about the world, not the who, what, where. It would be weird if two different juries came to different conclusions about where a gun was manufactured. But is that all just kind of like, we don't have to do that, but we do it anyway? So the gun example might be a little different, because 922G cases are about a specific gun, right? Maybe you might, like, as a legislative fact, it might, for example, a Springfield firearm, it could be taken as a legislative fact that those were made in Springfield. I think it would be. It would be very weird if there were two prosecutions, two people who own the same gun, and one jury found it was not manufactured in Connecticut, and one found that it was. That would be very weird. Right. That would be strange. And I don't think... Why do you guys try to prove that up in every case? And is that, if we agree with you, are we now saying, good news, the government no longer has to prove that the gun moved across state lines? You know, I would want to go look at 922G's language very carefully before I made a representation to that effect, because how this plays out in every federal statute is different. The jurisdictional elements... We would certainly be raising that question, right? It would, if we agree with you in this case, we have now, it would be an interesting question whether the government going forward still needs to prove where these guns were manufactured.  I think it would be a little bit similar, at worst, to what happened in Taylor, the Supreme Court's decision with the Hobbs Act attempted robbery of a marijuana dealer. Prior to that decision, two circuits had, in fact, suggested that the district court had some burden of proof to prove an actual effect on interstate commerce was implicated by marijuana dealing, and the Supreme Court said, no, no, no, no, no, no, no, that is not correct. And to talk a little bit about how it works with this statute and bringing us back to Section 7.3 specifically, because this statute stands on its own terms. So I think what's really helpful to understand about this statute is that Section 7.3 is what I'm going to call a statutory shorthand. Congress could have, instead of using that language, listed every single place within the United States that falls under its legislative authority due to the enclave clause or state session. It could have done that, but that's an impractical way to write a statute. So instead what it did is it used the language in 7.3 to describe those places. Much as in Section 924C, for example, it uses the phrase crime of violence and the statutory definition used there to refer to a host of state and federal crimes rather than listing them out one by one. That is the exact same way that Section 7.3 is working. And what Congress is counting on is that courts such as this one will look at Section 7.3 and apply those general principles and language to determine which places Congress is in fact talking about, the places that are within the special territorial jurisdiction of the United States. Now once that is done, once a court has concluded whether a place in fact meets that definition, here's how this works for a fact finder. At a trial, the fact finder must find the place of the defendant's offense. The district court will then instruct a jury, assuming there's a jury or in a bench trial like this case, the district court just makes its legal ruling, that a given place, in this case FCI Petersburg, is within the United States special territorial jurisdiction. Then to apply that law to the facts, what a fact finder does is it takes its factual finding where the offense occurred and it takes the district court's legal ruling and then says, did Mr. Perez's crime occur within the special territorial jurisdiction of the United States? That is the law, the facts, and the application of facts to law as happens in every case for every element. So you're saying it's like a Major Crimes Act case? It's exactly similar. In fact, I think it's very telling. We cite to McGirt, obviously. I think if this Court were to embrace Mr. Perez's position in this case, that would call into question whether or not a jury needs to start weighing in on whether crimes involving major crimes cases. You do rely on treaties and legislative acts here. Certainly. Yes. What's interesting, what's interesting to me, that all these years this case is coming up, you know, because there have been a lot of crimes committed. All of a sudden we get this case, which I will tell you on both sides, these briefs are a really good part of both of you. But let me ask you a question. Of all we've talked about, was the initial intention of Virginia in giving this land to the federal government for it to be a military camp? Yes. At the time the lands were originally acquired, that is correct, in 1918. And Virginia before then, didn't it have some kind of statute, a reversionary type statute that says if you change the use of this, it comes ours again? I mean, North Carolina has got something like that dealing with railroads for people, which I think is pretty cool for when you give up your land for a railroad and it ceases to be used. Right. Landowners 40 years from now can all of a sudden find themselves with quite a prize. Right. Not too many people know that, so they're probably listening right now. But isn't there a reversionary statute here? So since we've turned to kind of what I'll call the second question, the true legal merits question here, let me talk about this. I don't want to turn you for the first one, but that's an intriguing argument on my part, is the fact that Virginia gave it to be a military camp. Virginia has a reversionary statute that says when you change it, and they change it to a correctional center, sometimes I guess in the 40s or whatever, and then that's where I saw that little statute with the C in it that kicks in and says, well, government's got to accept it. And it sounds like it's perfunctory, but it looks that's a pretty strong piece of language there that it leads to. Yes, Your Honor. So Virginia law is evolving a lot in this period of time, and the portion of Virginia law relating to consent and session that we're talking about actually did not apply to these particular properties. And let me walk through kind of like the question of the reversionary. Yeah, that reversion clause had no effect, and even if it did there's an alternative argument for why it didn't matter here, and let me walk this court through that. So the reversionary clause that you're talking about comes from Virginia's general consent statute as it existed, I believe, on March 4, 1918. And you can see that on page A4. Then on March 18, 1918, Virginia passed a revision to its general consent and session statute, and in doing so you can see this is on page A10, I believe. Yes, it begins on A10, and on A11 it repeals the prior version of its general consent statute. And in A11, the one that's in effect as of March 16, 1918, and that will then go on to govern the acquisition of the lands underlying Camp Lee, there is one condition on the United States persisting jurisdiction over those lands, that is that it shall continue to own or occupy. This act, which replaces the prior one, no longer contains a condition providing that it must be used for the original purpose granted. Now, that law remains in effect until 1936 when Virginia again revises its general consent statute. So, counsel, let me just jump in. I want to let you finish your analysis. What you're doing now creates an issue for me. We may follow that and agree with you, but we're doing a lot of detailed work here that the district court didn't have the documents to do, didn't do. It seems like, to me, we have this first question, which is, is this for the court or for the jury? And for you to win, it's got to be for the court. And we've talked about that a little bit so far. And I think if, as a matter of principle, you're right that appellate courts can fact-find legislatively, so that's what you're asking us to do. But on the other hand, we've said a bunch of times we're really a reviewing court, more so than a district court that finds facts in the first instance. Maybe even that's the best way to do legislative fact-finding. So why wouldn't we let, if you're right on the first question, why wouldn't we send this back so the district court could make sure it has all these documents from which to find legislative facts and do this analysis and us review it? Because what we're talking about here is a pure question of law, and that is emphatically this court's domain. For example, if the district court ruled in a case implicating Bruin, which I heard you say earlier, just said, I believe that 922G1 is constitutional, didn't do any sort of analysis into the Second Amendment history that's now necessary in those cases, this court could certainly do the Second Amendment analysis on its own. I didn't mean to suggest we can't. I'm just wondering whether you, if you're right on the first question, whether we should do this in the first instance or whether we should send it back for the district court to do it. One of the things about legislative fact-finding is making sure you have all the legislative facts so you're not missing something. Now, you gave three documents at trial. Now we have a lot. I'm not suggesting there's anything untoward with that, but there's a question of is this even the full universe of documents that represent the issues here? And one of the criticisms of courts doing legislative fact-finding is that they cherry-pick. Well, you know, no one's suggesting we cherry-pick, but whoever does this seems like we need to be assured we have everything, and I'm just concerned about that. So two points on that, Your Honor. To the concern, to your concern that maybe there isn't everything, Mr. Perez has had the same opportunity that the government has had here to offer for judicial notice of this court any relevant legislative facts. Can I just stop you there? Because this does dovetail with a concern of mine. So, like, when this, this is an element of the offense. If you have to prove it up at trial, there's like Rule 16 discovery, there's a lot of time. I mean, you dropped 300 documents attached to your response brief on appeal. The defendant had, I don't know how many weeks it is, but it's quick between a response brief and a reply brief and, like, four pages in a reply brief to respond. That is not normally how this works. To prove an offense, to prove an element of a criminal offense, like, we don't tell defendants, like, the government's not allowed to say, you'll find out what documents we're relying on when we submit our brief, and then, good news, you'll have two weeks to write a reply brief. That is not how this is supposed to work. So, Your Honor, a couple of things. I think if we were talking about the factual component of Section 7-3, yes, I hear you. I agree there's rights to discovery in that regard. But there are. I thought you were, I thought you had sort of conceded that there were at least legislative facts that have to be found. Like, when did this stuff happen? Right. So I don't think that the legislative facts are found in the way that we normally use that term, right? Legislative facts are things that courts rely on in announcing, in declaring what the law is. So in declaring what Section 7-3 means. Okay. So we have to rely on certain legislative facts. Certainly. That's true. But I think that's true.  We're not usually doing that in order to decide that an element of the offense has been satisfied. This is an unusual context to be doing that in. And that is why I am worried about usually when someone is deciding, have the elements of the offense been satisfied so that this person is guilty of a crime, they're doing that in the context of a set of procedural protections that ensure that the defendant is going to have time to rebut any case the government thinks it can make. So it feels unusual, and I understand that just because of the nature of Section 7-3. Section 7-3, right, is like in a way concerned with historical facts, which are legislative facts, but they're like historical in the like big history sense of the word. So it's unusual in that sense. But I don't think the actual activity of what the courts are doing is unusual. For example, in the Commerce Clause context, if this court were asked whether or not there's an interstate effect on commerce due to banking, for example, this court would have to rely on a series of legislative facts to conclude that there is, in fact, such an interstate effect on commerce, right? The volume of financial transactions that happen, the fact that it causes borders. I thought we would just rely on case law. Okay. Right, but I mean. I don't think we would have to do legislative fact finding. We kind of know the court has already laid out the standard. In REACH and cases like that, we just apply that.  Yeah, but it's applying a standard to legislative facts about a particular industry to determine whether or not there's commerce clause. Sorry. Yes. I'm going to take you a little bit afield for a second. Just what happened with the copier in this case? Is it possible that you were looking at the one photocopier that was not manufactured outside this country? Yeah, well, my understanding is that, you know, defense counsel challenged whether or not the copier was, in fact, manufactured outside the country. And the district court found his challenge persuasive and said, no, the copier doesn't appear to have traveled in interstate commerce. And, you know, in that. We found a tray of something attached to it. Right, the document feeder, because that's where you guys moved up on the stage. Yeah, and the district court acquitted on that ground, and we haven't appealed that. I'm just wondering, because it does seem to me that these 300 pages, just going back to Judge Quattlebaum's point, you're asking us, I mean, it's a lot to take judicial notice slash reliance slash find these facts. It's complicated. It's an obvious thing. Why not? I'm just sort of surprised that you didn't, assuming you can just keep trying as many times as you want to prove this element, why not just come here and say please take judicial notice of the fact that this copier was manufactured outside the country? Because that would be a legislative fact under your kind of rubric. I think that's a little bit different, because it's the copier that was literally used in this particular case for the production of the images, and Mr. Perez's crimes are about production. Right, that relates to his crime. So does where he committed. I really don't see that distinction. I thought you would say it is an unchanging fact about the world where this copier was made. If two prisoners are charged with this kind of morphed child pornography, it would be very strange. If one jury concluded the copier did move in foreign commerce and one jury concluded it didn't. Like this is supposed to be an unchanging, established fact that cuts across cases. And it just seems like we could do, it just seems like it would have been so much easier. You wouldn't need 300 documents. Maybe so, but the district court acquitted and, you know, acquittals are, the government didn't cross appeal from that, right? So, I mean, I'm not to say that that's not before this court. It's not really, it's not. Oh, I know it's not. I'm just wondering why it wouldn't have been allowed. Yeah, and I take the point, Your Honor. I see that my time has expired. I'm happy to answer any other questions about this case. Well, as I said, the briefs in this case are really, really good. You guys have done a great job on it. And we could probably spend the rest of the day talking this case through. There are a lot of aspects to it. We're just not going to do that right now. Thank you, Mr. Wynn, for your argument. I understand that. I would ask that this court. All right. Mr. Cannon, you've got a few minutes in the bubble. I'll try to be succinct and focus on whatever the court is most interested in, I think. Let me ask this question regarding the question Judge Qualibon posed. I thought you basically argued that there's no avenue for a remand on any portion, whether the second part of it or the first part of it. That's correct, Your Honor. So you don't think that if we go with the first part of this analysis, there's no reason for a remand? That's correct, Your Honor. I think a remand would not be forbidden in order for the district court to have a first bite if the court determines it's a legal question. I don't normally hear a defendant say that. It sounds like to me if he can get any kind of remedy, he would take it, even if it's a remand. But, you know, to say, no, don't do it if you get the first one, that's – well, and I get your point in terms of why you're going there. You're probably analyzing it from a legal perspective, saying it doesn't really mesh up once we get back there and start looking at the real deal on it. But I just want to get that point clear because it seems odd that you are saying no remand, which means no relief if we go with the first part. And ordinarily I would welcome any kind of remand. But honestly, Mr. Prez is already serving this 15-year sentence for drawing pictures. The evidence at trial was insufficient. And Berks says double jeopardy forbids a remand for additional fact finding or for a second bite at the apple to try to prove an element that wasn't proven at trial. If the court does determine this is a legal question, then it could determine it itself or it could remand to the district court just to determine the legal question in the first instance. That seems like a rare occasion, but it certainly wouldn't be forbidden and we wouldn't object to that. But I think the first question the court would have to determine is, is this a question of law or a question of fact? And maybe prisons in general or the meaning of Section 7.3 are legal questions, but whether those requirements were satisfied as to a particular piece of property with particular transfer dates and particular use is just a question of fact. The government, and I think the government's right, Section 7.3 is shorthand and it doesn't list specific properties. So as you understand how this trial should work, the government should have put these statutes and these deeds and would be making decisions about whether it reverted back or didn't revert back. That's what you would have the jury do in this case, get these 300 documents and decide whether A, the federal government acquired the land, B, did the state consent, or C, to either concurrent or exclusive jurisdiction, and C, did the federal government accept the jurisdiction. We'd actually be submitting that to the jury. That's how you say this trial should have gone? Not all of it, Your Honor. The legislative, the statutes and their meaning are a matter of law for the court. So we wouldn't have to give them the statutes. It could instruct them, here's what the law says. But the factual determinations under that law that place this property within that definition or outside of it would be, one, whether or not the property was acquired before 1940 or after, and two, here's what Virginia said about its consent statute, and you've got to determine whether its use of that, whether that's the use of the property was inside or outside that scope of that state's consent. So not all of it. I think the court would, statutes, we agree, are legislative facts. The court can always judicially notice. These things are all commingled in this decision about whether there's special territorial jurisdiction here. Well, a lot of statutes list specific geographic locations. The one establishing the eastern district of Virginia lists the counties that constitute it. The treaty with the creeks at issue in McGirt lists, meets and bounds, the actual location that you can draw on a map of a place. But Section 7 doesn't do that. It lists these broad categories. The plain in certain circumstances and places belonging to certain countries. As far back as 1820, we cited a case where the Supreme Court said the national character of a ship is an issue for the jury to determine on whatever evidence will satisfy it as to that. So the facts that place a particular property within this definition are factual findings, not legislative facts. Legislative facts are about what the statute means or what is the scope of Congress's power under the Commerce Clause. And that's what Raich was about. There were no fact-finding in Raich. It was a rational basis test. With legislative findings, the Supreme Court said, does Congress, we're not even saying whether the protection in this case of marijuana affects interstate commerce, because we're finding that there was a rational basis for Congress to conclude that. And in Taylor, it wasn't about whether it actually affected interstate commerce. It was about the scope of the law. What is Congress's power here? And we have no disagreement. I apologize. I'm beyond my time. But there's no disagreement on the law. Just the facts. This is a very dense case, as has been indicated. The two of you have given us a difficult decision, but that's what we do up here. We will do it. We're going to come down, greet counsel, and proceed to the next case.
judges: James Andrew Wynn, Pamela A. Harris, A. Marvin Quattlebaum Jr.